MESICK et al. v. HASSLER.

(Circuit Court, D. Massachusetts.   January 4, 1905.)

No. 1,545.

1. PATENTS—INFRINGEMENT—MACHINES FOR BRAIDING WHIPLASHES.
    The Turner patent, No. 432,582, for improvements in racers used in machines for braiding whiplashes, claim 3, must be limited to the combination of the specific elements described, and, as so limited, is not infringed by the machine of the Hassler patent, No. 683,276, which lacks one of the essential and characteristic elements of such combination.

In Equity.

Oliver R. Mitchell, for complainants.
Allen Webster, for defendant.

COLT, Circuit Judge.   The present bill is brought for infringement of the Turner patent of July 22, 1890, No. 432,582, for improvements in racers used in machines for braiding whiplashes. The defendant's device is constructed under the Hassler patent of September 24, 1901, No. 683,276.

Racers are carriers for delivering the strands of leather to be braided in a whiplash-braiding machine.   There are several racers in each machine, and they operate to pass each strand alternately over and under other strands as they travel around a ring in a sinuous path.   It is necessary that the strands should be delivered from the several racers under a strong and equal tension, and it is also important that the tension members should be capable at any time of being opened for the purpose of inserting a strand, and then closed, without destroying the tension adjustment.

A racer is composed of several groups of mechanism: (1) A frame to which are attached a foot, shank, and tail-piece or guide; (2) a spool and its connecting mechanism; (3) tension devices; (4) a fixed tension member and a relatively moving tension member, and means for adjusting the movable tension member to the fixed tension member to regulate the tension, and means to open and close the tension members for the purpose of introducing a strand.

The Turner patent in suit is for improvements in spool mechanism, the tension mechanism, and the mechanism for adjusting and separating the tension members.

It is not contended that the defendant's racer embodies either the spool mechanism or the tension mechanism proper which form the subject-matter of claims 1, 2, and 4 of the Turner patent.   The alleged infringement is limited to claim 3, which covers the means for adjusting and separating the two tension members.   The claim reads as follows:

"(3) In a racer, the frame, 6, provided with a pivot, 29, the spring, 28, the block, 30, arm, 31, cam-screw, 33, and set-screw, 34, all so arranged and combined that the screw, 33, shall operate as an adjustable cam to produce pressure by means of spring, 28, on saddle, 25, while for the purpose of adjusting the thread or strand to the tension apparatus the spring, 28, may be opened or thrown back from the saddle."

This is a combination claim, and the question we have to determine is whether the defendant's racer contains this combination. More specifically stated, the question resolves itself substantially into the inquiry whether there is found in the defendant's racer the "arm, 31," which constitutes one of the elements of the combination.

The tension devices proper in the Turner organization are a ratchet wheel and its braking mechanism. Co-operating with this ratchet wheel is a semicircular pressure-piece called the "saddle," which presses against the strand as it passes between it and the ratchet wheel. The saddle is connected with the frame, and by means of a slot in the frame is adapted to move to and from the ratchet wheel. A spring, which is pivoted to the frame, presses the saddle against the ratchet wheel, or, rather, against the strand upon its periphery. To hold the spring against the saddle, there is provided a block, which is also pivoted to the frame near the base of the spring. Passing through the block is an adjustable cam screw, which comes in contact with the spring. This adjustable cam screw, co-operating with the spring, regulates the pressure of the saddle upon the ratchet wheel. There is also a set screw which holds the cam screw in position, and thus permits no change in the pressure of the spring during the operation of braiding. To move the saddle away from the ratchet wheel in order to insert the strand, and at the same time not destroy the cam-screw tension adjustment, the end of the spring is thrown back from the saddle, which permits the saddle to move back in its slot. In order to accomplish this, the pivoted block is provided with a long lever or "arm, 31," bent at the outer end, and adapted to move outward from the frame. There is also a small recess cut in the frame, into which the end of the arm is sprung when it is moved back to the frame. When it is desired to move the saddle from the ratchet wheel, the "arm, 31," is moved outward, which causes the block, with its cam screw, to move upward; thereby relieving the pressure of the spring on the saddle, and permitting it to move away from the ratchet wheel. When the strand is inserted, the arm is moved back into the recess, thereby moving the cam screw back to its original position, and thus restoring the same tension between the saddle and the ratchet wheel.

In the defendant's organization there is no tension ratchet wheel, but the strand is held between a fixed and a movable tension member. The defendant's device discloses only an "abrasive" or rubbing tension, in place of the predominant brake-wheel tension of the Turner patent. There is, however, in defendant's racer, a movable tension member, which may be said to correspond to the saddle of the Turner patent. There is also a spring, attached to the movable tension member, which may be said to correspond to the spring of the Turner device. There is likewise in defendant's organization a block pivoted to the frame, and passing through this block an adjustable cam screw, which co-operates with the spring to press the movable tension member against the two fixed tension posts; and by means of a nut this cam screw may be set. There is also a notch in the spring, which holds the cam screw and block

in a fixed position. These last-mentioned parts may likewise be said to correspond to the block, cam screw, set screw, and recess of the Turner device.

We do not find, however, in defendant's racer, the long "arm, 31," of the Turner patent. This arm is an essential and characteristic feature of claim 3. It is by means of this lever that the spring, as set forth in the claim, "may be opened or thrown back from the saddle." It is this lever which turns the block, and so disengages the cam screw from the spring. It is by means of this lever that the block and cam screw are returned to their normal position, with the same tension adjustment.

There is no part in the defendant's organization which can properly be said to correspond to this arm of the Turner device. In defendant's block the cam screw passes through a projection or lug in the block. The main purpose of this projection is to provide a suitable part for the insertion of the cam screw. This projection is not in any legitimate sense an arm or lever, within the meaning of the Turner patent. The fact that the lug affords a projection which may be taken hold of by the hand in order to move the block does not make it the equivalent of the long arm of the Turner racer. If we eliminate the arm from the Turner structure, we have left substantially the defendant's organization.

In operating the Turner device, the long arm is simply moved outward from the plate with one hand of the operator. In operating the defendant's device, one hand first presses the spring to one side, while the other hand grasps the lug and pushes down the block. It may be true that the defendant's device is capable of being operated by turning the block upward with one hand. It is doubtful, however, if this way of operating the device is practical; but, even if it were practical, we still fail to find any such lever action as characterizes the Turner device.

Tension devices of many kinds are old in the mechanical arts. Claim 3 of the Turner patent must be limited to the combination of the specific elements mentioned. Mesick v. Moore (C. C.) 100 Fed. 845. The invention, by reason of its limited scope, cannot be enlarged beyond the particular combination set forth. This is not a patent calling for that liberality of construction sometimes given to inventions which mark an important advance in the art, or which separate success from previous failures. Since there is absent from the defendant's device one of the distinguishing and characteristic elements of the patented combination, there is no infringement, and a decree must be entered dismissing the bill.

Bill to be dismissed.